UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-386-KKC

BOBBY L. MASSEY, JR.                                                               PLAINTIFF

v.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                    DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Rec. No. 10), is **DENIED** and the Defendant's Motion for Summary Judgment (Rec. No. 11), is **GRANTED**.

**I.     Introduction**

Plaintiff Bobby L. Massey Jr. ("Plaintiff") filed an application for a period of disability and disability insurance benefits on May 6, 2004 alleging disability beginning on September 22, 2003. (Tr. 16). Plaintiff claims he has been unable to work since then because of a herniated disk, spinal stenosis, insomnia due to pain, depression, loss of memory and loss of concentration among other ailments. (Tr. 91). The claim was denied initially on September 10, 2004 and again upon reconsideration on January 11, 2005. (Tr. 16).

Plaintiff then filed a written request for a hearing on February 9, 2005. (Tr. 16). Two hearings were held before Administrative Law Judge Ronald M. Kayser ("the ALJ") on July 25, 2006 and September 6, 2006 in Lexington, Kentucky. (Tr. 16). Dr. Charles I. Hancock, a medical expert ("the ME") and Carrol A. Tarvin, a vocational expert ("the VE") testified at the September 6, 2006 hearing. (Tr. 16). The ALJ issued a partially favorable decision on September 28, 2006 finding that Plaintiff 'was disabled under sections 216(I) and 223(d) of the

Social Security Act, beginning on September 22, 2003 and ending on February 2, 2005. (Tr. 13, 28).

Plaintiff appealed the decision granting a closed period of disability and denying his claims for any period after February 2, 2005. (Tr. 12A). On August 21, 2008, the Appeals Council issued a decision unfavorable to Plaintiff. (Tr. 10). The Appeals Council adopted the findings of the ALJ and upheld his determination that Plaintiff was disabled from September 22, 2003 to February 2, 2005. (Tr. 11) However, the Appeals Council reviewed Plaintiff's claim that the ME was biased ultimately denying that claim.[1] (Tr. 11). Because the Appeals Council upheld the ALJ's determination, this decision is now ripe for review under 48 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (Tr. 7-9).

## II.   DISCUSSION

### A.   STANDARD OF REVIEW

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence

---

[1] The Appeals Council noted that the ALJ improperly failed to rule on Plaintiff's objection to the ME's testimony because he was not an impartial witness as an employee of the Social Security Administration. (Tr. 11). However, the Appeals Council found that the medical expert's testimony was acceptable based on independent findings that although he was contacted at the Social Security field office where he performs contract work for the Disability Quality Branch, he was not an employee of the Social Security Administration. (Tr. 11). The Appeals Council also specifically rejected Plaintiff's contentions that the opinions of treating sources were not adequately considered because it determined that the ALJ cited evidence, including testimony from the medical expert, and provided reasons for the weight he provided to the treating source opinions. (Tr. 11). Finally, the Appeals Council determined that print outs of prescribed medications and the results of blood work provided no basis for changing the ALJ's finding that Plaintiff's back impairment had improved. (Tr. 11).

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

When reviewing the ALJ's decision, the Court cannot review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**B.    OVERVIEW OF THE PROCESS**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. §416.920. The claimant has the burden of proving the existence and severity of limitations caused by their impairment and the fact that he is precluded from doing past relevant work for the first four steps of the process, however the burden shifts to the Commissioner for the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the first step, the claimant must show he is not currently doing substantial gainful

3

activity. *See* 20 C.F.R. 416.920(a)(4)(I). If the claimant is engaging in substantial gainful activity then he is not disabled, regardless of his medical condition, age, education, or work experience. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that he suffers from a severe impairment. *See* 20 C.F.R. § 404.1520©). If the claimant does not have a severe impairment, then he is not disabled.

At the third step, a claimant must prove that his impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d), § 404.1525, and § 404.1526. If claimant's impairment or listed impairment meet or medically equal a listing and meets the durational requirement (at least one year) then claimant is disabled. If the impairment does not meet these requirements then the analysis proceeds to the fourth step.

Before considering the fourth step, the ALJ must determine claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). An RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimants impairments, including ones which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the claimants RFC, he must determine whether he has the RFC to perform the requirements of his past relevant work. *See* 20 C.F.R. § 404.1520(f). If a claimant can perform past relevant work then he is not disabled. If he is unable to perform his past relevant work then the analysis proceeds to the fifth step.

At the fifth step, the Commissioner must show that there is sufficient work in the national economy that the claimant can perform given his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560©).

Once a claimant is found to be disabled at any point of the process, the ALJ must determine whether his disability continues through the date of the decision. In making this decision an eight step evaluation process must be followed. *See* 20 C.F.R. § 404.1594. The evaluation does not continue if the ALJ can make a decision at any step. First, the ALJ must determine if the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). Second, the ALJ must determine whether the claimants impairment or combination of impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1594(f)(2). The third step focuses on whether there has been medical improvement. If so, the analysis proceeds to the fourth step. If there has been no medical improvement the analysis proceeds to the fifth step. 20 C.F.R. § 404.1594(b)(1).

At the fourth step, the ALJ considers whether medical improvement is related to the ability to work. If this is the case then the analysis proceeds to the sixth step. 20 C.F.R. § 404.1594(f)(4); 20 C.F.R. § 404.1594(b)(3). At the fifth step, the ALJ determines if an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions. 20 C.F.R. § 404.1594(d), (e). If no exceptions apply, the claimant's disability continues. If one of the first group of exceptions applies, the analysis proceeds to step six. If one of the second group of exceptions applies, the claimants disability ends.

At step six, the ALJ determines if the claimant's current impairments are severe. 20 C.F.R. § 404.1594(f)(6). If they are severe then the analysis proceeds to step seven. At step seven, the ALJ assesses the RFC based on the claimant's current impairments and determines whether the claimant can perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If current impairments significantly limit the claimant's ability to perform past relevant work then the

analysis proceeds to the last step. At the final step, the ALJ must determine whether work exists in significant numbers in the national economy that the claimant can perform considering his RFC, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work he is no longer disabled, but if he cannot then his disability continues.

**C.     THE DECISIONS OF THE ALJ AND THE APPEALS COUNCIL**

Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 22, 2003, the date that he first became disabled. (Tr. 19). At the second step, the ALJ found that Plaintiff had two severe impairments: status post lumbar fusion on September 21, 2004 which was preceded by two earlier discectomies and depression. (Tr. 19). However, the ALJ determined that Plaintiff's obesity, foot and ankle pain, and diabetes mellitus exacerbated by prednisone use were non-severe impairments under Social Security Regulations because they did not significantly limit his physical or mental ability to do basic work activities. (Tr. 20).

At the third step, the ALJ found that from September 22, 2003 through February 1, 2005, Plaintiff's impairments met or medically equaled a listed impairment. (Tr. 20). Furthermore, he determined that during that period, Plaintiff lacked the residual functional capacity to perform even limited sedentary work. (Tr. 20). As a result, the ALJ found that Plaintiff was disabled as defined by the Social Security Act from September 22, 2003 through February 1, 2005. (Tr. 25).

Because the ALJ found that the Plaintiff was disabled for this period, he analyzed whether this disability continued through the date of his decision. The ALJ found that medical improvement occurred as of February 2, 2005 the date when Plaintiff's disability ended. (Tr. 25). The ALJ then found that after February 2, 2005, Plaintiff no longer had an impairment or

combination of impairments meeting or medically equaling a listed impairment. (Tr. 25). He concluded that Plaintiff had the RFC "to lift/carry 20 pounds occasionally and ten frequently; he can stand, walk or sit up to six hours out of eight; he has unlimited ability to push and pull. He cannot climb ropes, scaffolds, or ladders but may occasionally climb stairs or ramps." (Tr. 26). In addition, Plaintiff could "occasionally stoop or crouch and may frequently balance, kneel and crawl. He should avoid concentrated exposure to whole body vibration...[he must avoid working at heights or around dangerous moving machinery." (Tr. 26).

The ALJ determined that Plaintiff's medical improvements were related to his ability to do work. (Tr. 27). However, he found that Plaintiff was still unable to perform past relevant work because he had a RFC for limited light work and his past relevant work was done in excess of that. (Tr. 27). At the final step of this process, relying on testimony from the VE, the ALJ found that starting on February 2, 2005 considering Plaintiff's age, education, work experience, and RFC, he was able to perform a significant number of jobs available in significant numbers in the national economy. (Tr. 27). As a result, the ALJ determined that Plaintiff's period of disability ended on February 2, 2005. (Tr. 27-28).

The Appeals Council granted Plaintiff's request for review but issued an unfavorable decision. (Tr. 7-11).

D.  ANALYSIS

Both Plaintiff and the Commissioner have filed motions for summary judgment. The Commissioner's motion contends that the ALJ's decision was supported by substantial evidence. (Rec. No. 11). Plaintiff's motion contends that: (1) the ALJ clearly violated the treating physician rule; (2) the finding that Plaintiff can engage in light work was not supported by

substantial evidence; (3) the ALJ did not properly consider the effects of pain and Plaintiff's ability to engage in work tasks; (4) the ALJ's hypothetical to the VE was incomplete and not based upon substantial evidence; and (5) the Plaintiff did not receive a fair and impartial hearing.

**1. Treating Physician Rule**.

Plaintiff claims that the ALJ violated the treating physician rule by accepting the opinions of Dr. Jackson and Dr. Arnold prior to February 2, 2005 and then rejecting all of their opinions and RFC's after that date even though their opinions remained the same.

Under the treating physician rule, greater deference is generally given to the opinions of treating physicians than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This is because treating physicians are generally most able to provide "a detailed longitudinal picture of a claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.* Consequently, their findings are usually accorded more weight than those of non-treating physicians. *Id.* Normally, "if the opinion of the treating physician as to the nature and severity of a claimant's condition is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record,' then it will be accorded controlling weight." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

When a treating physician's opinion is not controlling, the ALJ must base his determination of how much weight to give it on several factors including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the treating physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

Regardless of whether a treating physician's opinion is controlling or not controlling, there is a rebuttable presumption that the treating physician's opinion is entitled to great deference.  *Id.* (citing SOC. SEC. RUL. 96-29, 1996 WL 374188, at *4).

Social Security Rule 96-2p sets forth the procedural requirement that an ALJ must provide good reasons for discounting treating physician opinions, which are specific enough that subsequent reviewers will be able to determine the weight that the ALJ gave to the treating physician's opinion and the reasons why that weight was given.  *Rogers*, 486 F.3d at 242; SOC. SEC. RUL. 96-2p.[2]  A failure to follow these requirements indicates a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record as a whole.  *Id.* at 243.

In determining that Plaintiff had the ability to perform sedentary work and had shown medical improvement, the ALJ explained that the RFC evaluations of "Doctors Jackson and Arnold are rejected...." (Tr. 27).  Because these opinions of Plaintiffs treating physicians have been rejected, this Court must look at the ALJ's grounds for discounting their opinions.  In making this determination, the ALJ relied extensively on the testimony of a ME.  (Tr. 23-25).  In addition, ALJ relied on the apparent inconsistency of their opinions with the objective medical evidence and their own treatment notes.  (Tr. 20-24).

The ALJ rejected the RFC of Dr. Arnold for a variety of reasons.  First, using the testimony of the ME, he found that the RFC limited Plaintiff to less than sedentary work, despite

---

[2] This procedural requirement has two purposes.  First, it allows a claimant to understand the disposition of their case, especially in a situation where their treating physician has led them to believe that they are disabled and then the Commissioner informs them that they are not disabled.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Second, this requirement ensures that an ALJ applies the treating physician rule and allows for meaningful appellate review of this application.  *Id.*

the fact that Plaintiff was not confined to bed rest or a wheelchair even after having gained over seventy pounds because of a kidney condition. (Tr. 23). The ALJ agreed with the ME that it seemed hard to believe that someone incapable of lifting ten pounds could function without a wheelchair or being confined to bed rest while carrying about seventy pounds of excess fluid from the kidney condition. (Tr. 23).

The ALJ also found that objective medical evidence contradicted Dr. Arnold's RFC. For example, Plaintiff's reflexes in November 2004 were grade four strength which was nearly normal, he was able to heel toe walk, had a negative sedimentation rate in April 2005 and did not have any radiculopathy by June 2005. (Tr. 23, Tr. 250-93).

The ALJ also considered treatment notes showing Plaintiff's condition improving in rejecting the RFCs of Dr. Arnold and Dr. Jackson. By November 5, 2004 Plaintiff reported being able to walk three hundred to four hundred yards, was able to heel walk, could support his weight while standing on his toes and a twice a day stretching program was recommended. (Tr. 262). By December 2004, Dr. Jackson noted that he was able to walk "up to a third of a mile at a time. This is a great improvement from about a year ago...." (Tr. 261). These same notes found Plaintiff had good strength in his bilateral lower extremities, sensation to be grossly intact, an absence of a right ankle jerk and normal left ankle jerk. (Tr. 261). Improvement was also supported by films of the Plaintiff's surgery site indicating good positioning of instrumentation and apparent fusion across the surgery site. (Tr. 261).

By February 4, 2005, Dr. Jackson reported that Plaintiff was generally stable and reported being able to walk between 1/4 or 1/3 of a mile at a time. (Tr. 258). Despite some lingering pain, Dr. Jackson noted that "we are going to increase his activity" so that he would attempt to

10

exercise two times per day. (Tr. 258). By April 2005, Dr. Jackson notes indicate Plaintiff reported having made "slight improvements in his ability to walk" despite some continued back and leg pain. (Tr. 255). Dr. Jackson found Plaintiff to be "neurologically stable... [and] Showing very slow but slight improvements." (Tr. 255). Dr. Jackson also encouraged Plaintiff to continue his activity, swimming and walking as tolerated. (Tr. 255). He also noted that there was "no evidence of nerve root compression" and found that "the lumbar myelogram shows a fusion across the previous surgical site and no evidence of nerve root compression." (Tr. 253).

The ALJ also considered a RFC conducted by the Kentucky Disability Determination Examiners in December 2004 indicating that the Plaintiff could perform medium work and giving the "opinion of Thad Jackson...no weight." (Tr. 229-37). Consideration was also given to Plaintiff's examination by a pain specialist, Dr. William O. Witt ("Witt"), in October 2005. According to notes from this examination, Plaintiff's pain level was 3/10, he had a normal gait and straight leg raise was negative in the sitting and supine position. (Tr. 314). Strength in the lower left extremity was 4/5 and strength in the right lower extremity was 5/5. (Tr. 314). However, Plaintiff claimed pain resulting from the toe and heel walk. (Tr. 314).

Upon reviewing all of this evidence, the ALJ determined that the treating physicians' notes and the objective medical evidence conflicted with their opinions. Consequently, he employed a ME to review Plaintiff's medical records and testify at a second hearing by telephone. (Tr. 424-56). Based on his review of the evidence discussed above, the ME determined that the RFCs of Dr. Jackson and Dr. Arnold have no credibility. (Tr. 23). The ALJ adopted this position and gave the ME's testimony great weight. (Tr. 23-27).

On the record before it, the Court finds that the ALJ met the procedural requirements

11

required before discounting the opinions of the treating physicians. He made clear how much weight he was giving their opinions and explained why this determination was made. Specific inconsistencies between the opinions of the treating physicians and the objective medical evidence including their treatment notes were pointed out. As a result, the Court finds that it was not error for the ALJ to not give weight to the RFCs of the treating physicians.

**2. The ALJ's Finding that Plaintiff Can Engage in Light Work.**

Plaintiff argues that there is no evidence in the record, much less substantial evidence, to support the ALJ's finding that Mr. Massey can perform light work. Plaintiff claims that the RFC's performed by Dr. Jackson on February 2, 2005 and March 2005 finding him unable to perform sedentary work support this position. However, as already discussed above, the ALJ gave great deference to the findings of the ME that the RFC's performed by Dr. Jackson and Arnold have no credibility based on their inconsistency with treatment notes and the objective medical evidence. (Tr. 23-24).

In addition, as discussed above, the record contains substantial evidence that Plaintiff's condition was improving in from 2004 through 2005. This evidence includes Dr. Jackson's treatment notes, MRI results before and after the date of medical improvement, and the testimony of the ME interpreting the medical evidence contained in the record. As the Commissioner points out, Plaintiff bears the burden of demonstrating that he was disabled during the entire period of disability. 20 C.F.R. § 404.1512©). In this case, the Court cannot say that there is not substantial evidence in the record supporting the ALJ's decision that after February 2, 2005,

Plaintiff was able to engage in light work.[3]

**3. Whether the ALJ Properly Considered the Effects of Pain and the Plaintiff's Ability to Engage in Work Tasks?**

Plaintiff also argues that although the ALJ cited SSR 96-7p, he failed to perform the required analysis for the discussion of pain and its effect on Plaintiff's ability to perform work activities. Plaintiff takes issue with the ALJ's determination that Plaintiffs testimony about pain and its effects is without substantial evidentiary support. In his opinion, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, "the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible beginning on February 2, 2005." (Tr. 26).

Pursuant to Social Security Rule 96-7p, "in determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologist and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SOC. SEC. RUL. 96-7p, 1996 WL 374186 at *1-2.

---

[3] Plaintiff argues that the ALJ does not articulate exactly what evidence he uses to find that medical improvement occurred on February 2, 2005 and claims that "it would be an extremely rare case with miraculous medical intervention for a claimant to move from a listing of severity to light work in one day, particularly in the month of February 2005 where nothing new happened to Mr. Massey except continued care for his pain." However, Plaintiff cites no authority for the proposition that in determining that there has been medical improvement, the ALJ must disprove another potential date for medical improvement. Furthermore, the evidence relied on by the ALJ indicated that Plaintiff's physical condition was gradually improving throughout late 2004 and through 2005 leading to his determination that there was medical improvement in February 2005 so that Plaintiff became capable of performing light work. This finding appears to be supported by substantial evidence despite the fact that a different result could have been reached.

On May 31, 2006, Plaintiff indicated that "my medical conditions have completely taken away my life as I knew it before my back injury. I cannot walk, sit/stand for any period of time without being in pain." (Tr. 119). The ALJ found that this testimony concerning the Plaintiff's pain was not credible based on the objective medical evidence. This is the same evidence relied upon by the ALJ in finding that Plaintiff had medical improvement.

Plaintiff specifically stated that:

> Most of the time, I spend my days resting or just laying around the house...I have a hard time ambulating and any physical exertion causes me to have to rest during the day. If I have an MD appointment, I may get a shower and get dressed but that usually takes a lot longer and I am completely drained before I get started.

(Tr. 26, 119). The ALJ found that these statements were contradicted by the objective medical evidence showing Plaintiff's physical condition improving and his treating physicians' notes recommending increasing his physical activity and exercise.

Plaintiff's own statements also undermine his claims. In October 2005, Plaintiff informed Dr. Witt that his medication has "helped to maintain his pain level at a 3 out of ten on the numerical pain scale" and that if "he has undergone physical activity, his pain level would increase to a 6 out of 10." (Tr. 312). Plaintiff also testified at the hearing that prior to an onset of kidney disease, he was "doing some swimming and some walking" and "will be trying to start swimming and walking again." (Tr. 408).

Upon considering all of this evidence, the ALJ determined that while Plaintiff's medical impairments could reasonably be expected to produce the alleged symptoms, his statements about the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 26). Plaintiff claims argues that blanket assertions that an individual is not credible do not

14

pass muster, nor do explanations as to credibility that are inconsistent with the entire record and the weight of relevant evidence. *See Hurst v. Sec'y of Health & Human Serv.*, 753 F.2d 517, 519 (6th Cir. 1985). However, in reviewing the ALJ's decision, this Court finds that he gave sufficiently specific reasons supporting his finding that Plaintiff's statements regarding his pain were not entirely credible. Moreover, the Court notes that "because the ALJ...[has] the opportunity to observe the demeanor of...[the Plaintiff], his conclusions with regard to credibility should not be discarded lightly." *Varley v. Sec'y of Health & Human Serv.*, 820 F.2d 777, 780 (6th Cir. 1987)(citations omitted).

After finding Plaintiff's statements not entirely credible, the ALJ used the objective medical evidence in the record and the testimony of the ME to determine that Plaintiff had the RFC to perform light work. (Tr. 26). The Court finds that this determination was supported by substantial evidence in the record and that the ALJ did not err when he found Plaintiff's testimony concerning his pain and its effects after February 2, 2005 to be not entirely credible.

**4. Whether the ALJ's Hypothetical to the VE was Incomplete and Not Based on Substantial Evidence?**

Plaintiff alleges the ALJ did not give the VE a full and complete hypothetical of Plaintiff's exertional and non-exertional impairments as is required. A VE's testimony regarding the availability of suitable work is substantial evidence for an ALJ's findings where the testimony is given in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments. *See Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). However, the hypothetical question posed does not need to include limitations that are not supported by the record. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146,

150 (6th Cir. 1996).

At the hearing, the ALJ instructed the vocation expert to consider someone of Plaintiff's education background who:

> would be able to lift 20 pounds on occasion, 10 pounds more frequently, stand and walk six out of eight, sit six out of eight, no limits on pushing and pulling, avoid climbing, ropes, scaffolds, and ladders; occasionally climb ramps and stairs; frequently balance, kneel, crawl, but occasionally stoop and crouch; avoid whole body, concentrated whole body vibration and exposure to dangerous heights and unprotected heights and dangerous machinery.

(Tr. 458). The ALJ then asked whether this hypothetical individual would be able to do any light transferrable skill factory jobs. (Tr. 458). In response, the VE identified numerous positions that someone with the Plaintiff's RFC could perform nationally and in Kentucky. (Tr. 458-60).

Plaintiff contends that the above hypothetical was incorrect because Plaintiff's treating physicians' RFCs indicated that Plaintiff could only sit/stand and walk for four to six hours every day. However, as the Commissioner points out, the ALJ specifically rejected the RFCs conducted by the treating physicians as being inconsistent with their own notes and the objective medical evidence in this case. Consequently, the ALJ was not required to include these limitations which he did not find credible in his hypothetical question to the VE. The hypothetical question included all of the Plaintiff's limitations that the ALJ found credible. As a result, the VE's testimony that Plaintiff could perform other work that was available in substantial numbers throughout the national economy was substantial evidence supporting the ALJ's finding.

**5. Fair and Impartial Hearing.**

Finally, Plaintiff argues that no ME was needed in this case and that the ME that was

16

provided was not impartial. Under the Hearings, Appeals, and Litigation Law Manual (HALLEX), an ALJ may use a medical expert where "the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict." *See* HALLEX I-2-5-34, *available at* http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-5-34.html (last visited 10/19/09). Plaintiff claims there was no conflict in the evidence in this case because the testimony of the treating physicians and their opinions were uncontradicted. However, as discussed previously, the opinions of the treating physicians and their RFC were contradicted by their own treatment notes which have been referenced throughout this opinion and the objective medical evidence relied upon by the ALJ. Plaintiff also contends that the ALJ was required to contact the treating sources when he felt that the evidence was inadequate to support their opinions. *See* 20 C.F.R. § 404.1512(e). However, based on the evidence presented to the ALJ, this Court finds that it was not error for the ALJ to call an ME to help clarify the medical evidence.

Plaintiff next argues that the hearing that it received was not impartial because the ME was clearly biased because he works only for Social Security and has his office at the Social Security Office in Atlanta. Plaintiffs also point out that he had not treated a patient in years and was not a neurosurgeon but an orthopedic surgeon.

Under 20 C.F.R. 405.5, medical expert means "a medical professional who has the qualifications required by the Commissioner and who provides expertise to disability adjudicators." As the Commissioner points out, while the medical expert was not currently seeing patients, he was a board certified orthopedic surgeon and had a twenty eight year career practicing medicine. (Tr. 127, 426-27). As such Dr. Hancock qualifies as a medical expert.

Plaintiffs main argument on the ME's testimony appears to be that he was an employee of the Social Security Office and could not be impartial. This claim was specifically addressed and rejected by the Appeals Council which found that he was not an employee of the Social Security Administration and that as a result his testimony was acceptable. (Tr. 10-11). The Plaintiff does not explain precisely why the ME could not be impartial and does not explain how his alleged bias affected his testimony. Furthermore, Plaintiff does not cite any authority indicating that someone in Dr. Hancock's position may not serve as a ME at a hearing. As a result, the Court agrees with the Appeals Council that Plaintiff received a fair and impartial hearing and that the medical expert's did not undermine this right.

### III. CONCLUSION

For the reasons discussed above, the Court HEREBY ORDERS that:

(1) Plaintiff's Motion for Summary Judgment (Rec. No. 10) is **DENIED**; and

(2) Defendant's Motion for Summary Judgment (Rec. No. 11) is **GRANTED**.

Dated this 21st day of October, 2009.



Signed By:
*Karen K. Caldwell*
United States District Judge

18